IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARON PRYDE, on behalf of himself and all other similarly situated, | : CIVIL ACTION NO. 1:25-CV-667 :<br>: (Judge Neary) : |
| Plaintiff | : |
| v. | : : |
| ORRSTOWN BANK, | : : |
| Defendant | : |

**MEMORANDUM**

As the Supreme Court explained in the seminal opinion TransUnion LLC v. Ramirez, "[n]o concrete harm, no standing." 594 U.S. 413, 417 (2021). This is true even when "a statute grants a person a statutory right and purports to authorize that person to sue to indicate that right." Id. at 426 (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016)).

In this case, plaintiff Aaron Pryde claims defendant Orrstown Bank violated the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693, *et seq.*, EFTA's implementing rule, Regulation E, 12 C.F.R. §§ 1005.1, *et seq.*, Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq*, and was unjustly enriched. Yet, the counts in Pryde's complaint either fail to demonstrate a concrete harm to establish Article III standing, or fail to state a viable claim. Thus, Orrstown Bank's motion to dismiss will be granted.

I. **Factual Background & Procedural History**

Like most banks, Orrstown offers its customers an overdraft protection service. (Doc. 20 ¶ 59). An overdraft occurs when a bank pays for a charge despite the consumer having insufficient funds in his account to cover the charge. 12 C.F.R. § 1005.17(a). Banks can charge fees when a customer overdraws his account, but only if they provide proper notice of the overdraft service. Id. § 1005.17(b)(1)(i). This notice must "describ[e] the institution's overdraft service" and "[p]rovide[] a reasonable opportunity for the consumer to affirmatively consent . . . to the service." Id. § 1005.17(b)(1)(i), (ii).

But determining when a person has overdrawn his account is not always straightforward. Many banks calculate two separate account balances for each consumer checking account. (Doc. 20 ¶ 28). One account is the "actual balance" which reflects the actual amount of money in a consumer's checking account. (Id.). The other is the "available balance" which is the actual balance minus pending transactions and deposits with holds. (Id.). Banks may use either balance when assessing overdraft fees, (id. ¶ 29), but they must explain which calculation method they are using, 12 C.F.R. § 1005.17(b)(1)(i).

The differences between these two balances can cause confusion among consumers. For example, consumers' available balances are typically lower than their actual balances, (Doc. 20 ¶ 30) but, banks typically give consumers' actual balances on monthly statements, (id. ¶ 31). Thus, a consumer cannot reasonably

understand whether he will be charged an overdraft fee without knowing which balance will be used to calculate overdrafts.

Still, disclosure alone does not always dispel confusion. When a person makes a purchase with a debit card, a bank must decide—in that moment—whether to pay to charge. (Id. ¶ 44). At the point of sale, a bank either commits to paying the amount or declines to pay the transaction. (Id.). If at that initial moment, a bank authorizes payment, it will hold the requisite funds in a consumer's account; in other words, it reduces his available balance. (Id. ¶ 42). However, the funds are not usually transferred out of the consumer's account until several days later. (Id. ¶ 43, 47). Only when this transfer occurs does the transaction settle, and the bank reduces a consumer's actual balance. (Id. ¶¶ 43, 46).

Given this process, consumers can also fall victims of "authorize positive, settle negative" ("APSN") transactions. Consumer Financial Protection Circular 2022-06: Unanticipated Overdraft Fee Assessment Practices, 87 FED. REG. 66935, 66937 (Nov. 7, 2022); (Doc. 20 ¶ 58). These occur when the available balance on a consumer's account had sufficient funds to cover the original transaction when it was made, but lacks the necessary funds to cover the charge at settlement. Id. FED. REG. 66935, 66937 (Nov. 7, 2022). Therefore, it is important for consumers to know when a bank determines an overdraft occurred, at authorization or at settlement.

Pryde alleges Orrstown Bank's disclosure form suffers from two main flaws. First, he argues the form does not adequately describe how the bank calculates whether a customer has sufficient funds to pay for a transaction. (Doc. 20 ¶ 63).

3

Specifically, the Opt-In Form fails to explain which account balance—available or actual—Orrstown uses in determining whether an overdraft occurs, and it also fails to say if overdrafts occur at authorization or settlement. (Id.). Second, the disclosure form says Orrstown Bank will charge "a fee of up to $37.00" for each overdraft. (Id. ¶¶ 59-60). However, in late 2024, Orrstown Bank began charging $38.00 per overdraft. (Id. ¶ 61).

Orrstown Bank "assessed a $38.00 [overdraft] Fee on ATM transactions or one-time debit card transactions on November 19, 2024, November 20, 2024, December 2, 2024, and December 6, 2024" to Pryde's account. (Id. ¶ 69). In his first amended complaint, Pryde alleges that at least some of these transactions "were authorized on sufficient funds." (Id.). Orrstown Bank, however, has provided documentation showing that for each transaction, he actually had insufficient funds at authorization. (Doc. 26-1 ¶¶ 9-12; see also Doc. 26-2). Pryde has not contested the authenticity or the veracity of these documents.

## II.   Legal Standards

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a claim for lack of subject matter jurisdiction. See FED. R. CIV. P. 12(b)(1). Such jurisdictional challenges take one of two forms: (1) parties may levy a "factual" attack, arguing that one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional ken; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues that a claim is not within the court's jurisdiction. Lincoln

Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) (quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)). Additionally, "a factual challenge allows a court to weigh and consider evidence outside the pleadings, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016) (cleaned up). The plaintiff retains his burden to prove subject matter jurisdiction exists in the face of a factual attack. Id. (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

### III. Discussion

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 37 (1976) (citation omitted). Any plaintiff who wishes to sue in federal court must, at minimum, "show (i) that he suffered an injury in fact that is concrete,

6

particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion, 594 U.S. at 423 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). A plaintiff cannot come to federal court alleging only a statutory violation. "Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities." Id. at 423-24.

As was the case in TransUnion, the key standing question here is whether Pryde has alleged a concrete injury in fact. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." Spokeo, 578 U.S. at 340 (quoting BLACK'S LAW DICTIONARY 479 (9th ed. 2009)). Regarding the calculation aspect of Orrstown Bank's overdraft disclosure, Pryde has not suffered an injury that actually exists.

Pryde argues Orrstown Bank's disclosure form failed to comply with regulatory requirements and so Orrstown was prohibited from charging *any* overdraft fees. (Doc. 29 at 9). He is wrong. First, it is crucial to note that Pryde's harm is *not* a financial one, despite his attempts to frame it as such. (See id. at 12). Neither the EFTA nor Regulation E contains a blanket prohibition on the charging of overdraft fees. Rather, they require certain procedural steps, including disclosures, to be followed before such a fee can be charged. See 15 U.S.C. § 1693c(a)(3), (4); 12 C.F.R. § 1005.17. The harm the law and the regulations seek to prevent is a consumer making an uninformed choice. So, for Pryde to be able to sue in federal court, he needs to show how Orrstown Bank's deficient disclosure form caused him harm.

In TransUnion, for example, it was not enough for certain plaintiffs that a credit agency had failed its statutory obligation to "follow reasonable procedures to assure maximum possible accuracy" of their credit reports to establish standing; the plaintiffs had to allege a harm that occurred because of that failure. 594 U.S. at 418, 434-36. The alleged injury Pryde suffered cannot simply be that Orrstown Bank broke the law; he must show how its alleged misconduct harmed *him*.

Pryde fails to do so. Orrstown Bank has provided documentation, which Pryde has not disputed, showing that for all of his alleged overdraft charges, he had insufficient funds to pay for the transactions at the time of authorization. (Doc. 26-1 ¶¶ 9-12; see also Doc. 26-2). Therefore, Pryde cannot show how the lack of disclosed information on the part of Orrstown Bank caused him any harm. Put another way, even if Orrstown Bank had provided the information he deems missing, there is nothing to suggest Pryde would have acted any differently. He therefore lacks standing on his Regulation E claim as it relates to how Orrstown Bank determines whether an overdraft occurred.

Pryde's complaint also fails to state a claim relating to the specific amount of the overdraft fee. First, he argues that since Orrstown Bank's disclosure form says fees will only be charged up to $37, it is invalid as the bank actually charges $38. (See Doc. 29 at 15). Yet, Pryde's complaint alleges Orrstown only began charging $38 in late-2024. (Doc. 20 ¶ 61). The complaint fails to say when Orrstown provided Pryde the disclosure. Therefore, he cannot state a claim that the disclosure was non-compliant when it was provided to him. He is also wrong that because it raised

8

the overdraft fee, Orrstown Bank was required to send an updated disclosure notice. Nothing in 12 C.F.R. § 1005.17 requires an entirely new disclosure form every time a bank materially changes its overdraft protection service. Orrstown Bank is further correct that 12 C.F.R. § 1005.8(a)(1)(i) allows it to make such changes as long as it provides written notice at least 21 days before the effective date of a material change. Nowhere in Pryde's complaint does he allege Orrstown Bank failed to send him this notice.

Pryde tries to argue that section 1005.8 does not apply to overdraft fees. (See Doc. 29 at 16-17). This specific part of Regulation E allows a bank to make certain changes to its terms as long as notice is provided to a consumer. 12 C.F.R. § 1005.8(a)(1)(i). In doing so, it incorporates the list of terms set forth in section 1005.7(b). 12 C.F.R. § 1005.8(a)(1). To Pryde, because an overdraft disclosure is not required at account opening, it falls outside of section 1005.7(a) and so Orrstown cannot rely on that authority to increase its fees with only prior written notice. There are three problems with this argument. First, section 1005.8(a)(1) only incorporates section 1005.7(b); it makes no mention of subsection (a). Thus, even if an overdraft fee is not covered by section 1005.7 by virtue of subsection (a), that does not necessarily mean it would be outside of subsection (b).

Second, section 1005.7(a) does not require disclosures at account opening, but rather whenever "a consumer contracts for an electronic fund transfer service or before the first electronic fund transfer is made involving the consumer's account." 12 C.F.R. § 1005.7(a). As persuasively explained by an Eastern District of Virginia

9

Court, an overdraft protection service is a type of electronic fund transfer service and so is covered by section 1005.7 in any event. See Virginia is for Movers, LLC v. Apple Fed. Credit Union, 720 F. Supp. 3d 427, 444 (E.D. Va. 2024).

Third and finally, when the Federal Reserve issued the original version of the overdraft service regulation 2011,[1] it claimed authority from 15 U.S.C. § 1693c to issue the regulation. Electronic Fund Transfers, 74 FED. REG. 59033, 59073 (Nov. 17, 2009). That section allows a bank to change its terms of a service as long as it provides written notice twenty-one days before such change would take effect. 15 U.S.C. § 1693c(b). Thus, the statutory authority granting the power to regulate overdraft services also allows changes to that service by providing prior written notice. Because Pryde does not allege Orrstown Bank failed to send a notice of the overdraft fee increase, he fails to state a claim on the increased overdraft fee as well.

Now, only Pryde's state law claims remain. One is a claim of unjust enrichment and the other is a claim under the UTPCPL. Because the court will be dismissing the parts of Pryde's complaint dealing with federal law, it will decline to exercise its discretion to adjudicate the remaining state law claims. See Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must*

---

[1] The Dodd-Frank Act, Pub. L. 111-203, 124 Stat. 1376 (2010), would transfer authority over implementing the EFTA from the Federal Reserve to the Consumer Financial Protection Bureau ("CFPB"). Electronic Fund Transfers (Regulation E), 76 FED. REG. 81020, 81020 (Dec. 27, 2011). When the CFPB reissued Regulation E, it did so without "any new substantive obligations on regulated entities." Id.

decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") (quoting <u>Borough of West Mifflin v. Lancaster</u>, 45 F.3d 780, 788 (3d Cir. 1995)); <u>see also</u> <u>Reiner v. Northumberland Cnty.</u>, 734 F. Supp. 3d 379, 390 (M.D. Pa. 2024) (declining to exercise supplemental jurisdiction where all federal claims had been dismissed); <u>Vorobyev v. Wolfe</u>, 638 F. Supp. 3d 410, 429 (M.D. Pa. 2022) (same). Pryde's unjust enrichment claim and his UTPCPL claim shall be dismissed without prejudice.

## IV.   Conclusion

"Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." TransUnion, 594 U.S. at 427 (quoting Casillas v. Madison Ave. Assocs., Inc., 926 F.3d 329, 332 (7th Cir. 2019)). Pryde has failed to show he suffered an injury in fact with respect to Orrstown Bank's overdraft service disclosure. He also fails to state a claim regarding the amount charged by Orrstown Bank in connection with its overdraft service. With his federal claims eliminated, the court declines to exercise jurisdiction over his state-law claims. This case shall be dismissed without prejudice.[2]

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    November 5th, 2025

---

[2] Because it is possible Pryde could allege other transactions exist where he would have suffered an injury in fact and could potentially allege Orrstown Bank never sent the required notice it was raising its overdraft service fee, dismissal on those parts of Pryde's complaint shall be without prejudice. See Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 217 (3d Cir. 2013), as amended (May 10, 2013).